OPINION
{¶ 1} Appellant appeals the December 6, 2005, decision of the Richland County Court of Common Pleas, finding him guilty of involuntary manslaughter.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Stevie K. Conley was charged with one count of involuntary manslaughter, with the underlying offense being child endangering, for the death of his six-month old son Gage Conley.
 {¶ 3} Prior to his death, six-month-old Gage Conley lived with his mother, Elizabeth Rader, and his sixteen-month-old brother, Valik Conley, in Apartment 38 at the Shelby Villa Apartments in Shelby, Ohio. His father, Appellant Stevie Conley (hereinafter "Appellant"), visited the apartment on a daily basis, and stayed overnight at least four nights a week.
 {¶ 4} On January 27, 2005, Appellant, Elizabeth Rader, and the two children had driven to Greenwich, Ohio to rent movies. They then returned to Ms. Rader's apartment for the evening. The children were put to bed in the apartment's only bedroom at around 9:00 p.m. Sixteen-month-old Valik was placed in the crib so that he would not get out of bed and disturb his parents. Six-month-old Gage was laid on the queen sized adult bed. Pillows, blankets, and stuffed animals had been placed around him in an attempt to keep him from rolling off of the bed.
 {¶ 5} After the children were put to bed, the Appellant and Ms. Rader watched movies. They also smoked a marijuana joint. According to Elizabeth, Valik woke up at around 1:00 a.m. on January 28, 2005. At that point, Appellant went in and attempted to get him back to sleep. He was unable to calm Valik, so he brought him out to his mother in the living room. After she rocked Valik to sleep, the Appellant took him back into the bedroom and put him in his crib.
 {¶ 6} Appellant gave a different timeline of events, in which he did not check on the children until nearly noon on January 28, 2005.
 {¶ 7} Taking into account the differing timelines provided by the parents, the authorities determined that the children had been unattended for between ten to fourteen hours. Sometime during the night, Gage rolled off of the bed and onto the baseboard heater, which was between 163 and 172 degrees. He was wedged on top of the heater in the space between the bed and the window, with no means to free himself. Gage suffered severe bums over a large portion of his body, eventually resulting in his death.
 {¶ 8} When Elizabeth Rader woke up the next morning, she went to the store to buy formula for Gage. After she left, Appellant went into the bathroom and smoked marijuana before checking on the children. No one discovered what had happened to Gage until nearly 12:00 p.m., when Elizabeth told Appellant to wake the boys up for breakfast. At that point, Appellant discovered Gage's body on top of the heater.
 {¶ 9} Elizabeth Rader called 911, but when paramedics arrived, there was nothing they could do. Gage Conley was pronounced dead at the scene. Both parents were taken to the Shelby police station to be interviewed and to have blood and urine samples taken for drug tests. Richland County Children's Services was also called in to investigate the case.
 {¶ 10} As a result of the investigation into Gage Conley Conley's death, Appellant was indicted on one count of involuntary manslaughter, with the underlying offense being child endangering. The Richland County Grand Jury also indicted Appellant on one count of reckless homicide.
 {¶ 11} Appellant, through his trial attorney, filed a waiver of jury trial.
 {¶ 12} A bench trial was held in this matter commencing on November 28, 2005, and concluding on December 1, 2005.
 {¶ 13} On December 6, 2005, Judge James Henson found Appellant guilty of involuntary manslaughter and sentenced him to seven years in prison.
 {¶ 14} Appellant filed the instant appeal, raising the following sole Assignment of Error for review:
 ASSIGNMENT OF ERROR {¶ 15} "I. THE TRIAL COURT'S VERDICT IN FINDING THE DEFENDANT-APPELLANT GUILTY OF INVOLUNTARY MANSLAUGHTER, WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, AND BASED ON INSUFFICIENT EVIDENCE, THUS HIS CONVICTION WAS IN VIOLATION OF ARTICLE I, 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I. {¶ 16} In his sole Assignment of Error, Appellant argues that his conviction is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 17} In State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 19} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 20} Appellant, in the case sub judice, was convicted of involuntary manslaughter in violation of R.C. 2903.04(A).
 {¶ 21} R.C. § 2903.04 states, in relevant part, as follows:
 {¶ 22} "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 23} The felony which Appellant is accused of committing is Endangering Children, in violation of R.C. § 2919.22(A).
 {¶ 24} R.C. 2919.22(A), sets forth the elements of child endangering and provides, in pertinent part, as follows:
 {¶ 25} "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."
 {¶ 26} Although not stated in R.C. § 2919.22, recklessness is the culpable mental state for the crime of child endangering.State v. O'Brien (1987), 30 Ohio St.3d 122, 508 N.E.2d 144.
 {¶ 27} In the case sub judice, Appellant argues that he should not have been found guilty because the child's mother was the one that placed the child on the bed and that there was no evidence that he knew the child had been placed on the bed.
 {¶ 28} Upon review of the record, we find that Captain Roub testified that when he questioned the Appellant after Gage's death, the Appellant stated that Gage was sleeping on the bed and Valik was in the crib. (T. 276). Additionally, Children's Services Investigator Mark Keck, who was present when both parents were interviewed, testified that Elizabeth Rader told them that when Valik woke up at some point after the kids went to bed, Appellant went in to check on him, and brought him out to her. (T. 99). She further stated that after she got Valik back to sleep, Appellant took him back into the bedroom. (T. 99).
 {¶ 29} Based on the above, we find that Appellant was in the room at some point during the night, and was aware of the children's sleeping arrangements on the night Gage died.
 {¶ 30} Furthermore, in that Appellant spent the night at the apartment at least four nights a week, he would have been aware of where his children slept.
 {¶ 31} The trial court also heard testimony from a number of witnesses who responded to the 911 call testified regarding the condition of the bedroom where the two children slept. Sergeant David Mack of the Shelby police department testified that the bedroom was in "complete disarray." (T. 113). He indicated that it was difficult to see the carpet on the floor. (T. 114). Sergeant Mack identified State's Exhibit 23KK, a picture that he took depicting the condition of the bedroom. From that picture, he testified that there was furniture overturned, drawers pulled out, as well as a television set and an air conditioner on the floor. (T. 115). Using State's Exhibit 23EE, Sergeant Mack also identified a "Pack and Play" in the bedroom filled to the brim with dirty clothing. (T. 116).
 {¶ 32} Mark Keck also testified that the bedroom was "[e]xtremely messy." (T. 46). He stated that the condition of the room was a concern because, in addition to clothing, there were garbage items such as paper, pop cans, cigarette butts, and a condom wrapper lying on the floor. (T. 46-47). Mr. Keck also described broken furniture lying near the crib that could pose a physical hazard to the children. (T. 47). Mr. Keck indicated that he found Gage and Valik Conley to be neglected kids. (T. 66). Based upon his investigation, it appeared that the parents were more concerned with things other than the proper care of their children, and that they spent more time attending to their own needs rather than the needs of their kids. (T. 66, 70). Based upon the length of time the children were left unsupervised; the inappropriate sleeping arrangements; the unsanitary home conditions; and the physical hazards, including the placement of the bed against the heater; Mr. Keck indicated that the disposition of his investigation in this case was substantiated for neglect. (T. 69-70).
 {¶ 33} Captain Lance Combs testified that the bed, box springs, and mattress along with the baby's crib were pushed right up against the baseboard heater in the bedroom. (T. 184). He also stated that it was very hot in the room and incredibly hot near the heater. (T. 194). Captain Combs indicated that he could feel the heat from the register when he was standing between the foot of the bed and the crib, about a foot away from the heater. (T. 195). When he placed his hand about four or five inches above the heater, it was extremely hot. (T. 194-195). Captain Combs testified that, based upon his observations of the location of the bed in reference to the heater, an adult lying on the bed would have felt the heat because the bed frame itself was hot. (T. 195-196).
 {¶ 34} Chief Scott Hartman of the Shelby Fire Department was called in to check the temperature of the heater with an infrared thermometer. (T. 140-141). He indicated that the north end of the heater, which was toward the head of the bed, was 172 degrees. (T. 142-143). The reading for the south end of the heater was 163 degrees. (T. 142-143). Chief Hartman testified that the placement of the bed against the heater may have caused one end of the heater to be hotter than the other. (T. 144).
 {¶ 35} Upon review of the evidence produced at trial, we find that same clearly established that the Appellant violated his duty to provide a safe sleeping environment for his child by allowing him to sleep on a bed next to an extremely hot heater when safer alternatives were available. His failure to provide a safe sleeping environment for his son, his drug use, and his failure to check on the welfare of his children violated his affirmative duty to provide for the health, safely, and welfare of his children. As a result, Gage Conley rolled off of the bed onto the baseboard heater, suffering severe burns that resulted in his death.
 {¶ 36} We find same to be sufficient to convict the Appellant of child endangering as the underlying offense to involuntary manslaughter.
 {¶ 37} In short, upon our review of the record, we find that any rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that appellant caused the death of another as a proximate result of committing the felony of Endangering Children. We further fail to find, upon our review of the record, that the trier of fact lost its way and created a manifest miscarriage of justice.
 {¶ 38} For the reasons stated in the foregoing opinion, the judgment of the Richland County Court of Common Pleas, is hereby affirmed.
By: Boggins, J. Wise, P.J., and Gwin, J., concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs to appellant.